IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORETTA BURTON AND MICHAEL BURTON, w/h 1719 CLINTON AVENUE, CHAMBERSBURG, PA 17201 | No. 3:09-CV-00288 |
| v. | |
| AMBER L. PRICE 14259 HERITAGE LANE MOUNT VERNON, OHIO 43050 | |
| -and- | JURY TRIAL DEMANDED. |
| CINDY A. PRICE A/K/A CINDY CLINEDINST 2666 US HIGHWAY 23 NORTH DELAWARE, OH 43015 | |

## DEFENDANTS' PRE-TRIAL STATEMENT

AND NOW, come the Defendants, Amber L. Price and Cindy A. Price, by and through their counsel and file the following Pre-trial Statement:

### A. BRIEF NARRATIVE STATEMENT OF THE CASE

The within lawsuit arises out of an automobile accident occurring on November 25, 2007. It is alleged that the vehicle owned by Defendant Cindy L. Price and being driven by Defendant Amber L. Price struck the rear end of the vehicle in which Plaintiff Loretta Burton was a back

seat passenger while it was traveling on the Pennsylvania Turnpike. Plaintiff alleges that Defendant Amber Price was negligent in the operation of the motor vehicle and Defendant Cindy Price was negligent for entrusting her vehicle to the Defendant Amber Price. Plaintiff claims that as a result of the accident, she has sustained multiple injuries, the most prominent of which include injuries to the neck and back and carpal tunnel syndrome. Plaintiff Michael Burton is asserting a claim for loss of consortium.

At trial, Defendants intend to prove that there was no negligence on the part of Defendant Cindy Price in allowing Defendant Amber Price to drive her vehicle and further than any negligence attributed to Defendant Amber Price in relation to the manner in which she operated the vehicle did not result in injuries as alleged by Plaintiff. Defendants intend to contest Plaintiff's alleged injuries as to their causation, severity and permanency.

## B. TYPES AND AMOUNTS OF DAMAGES CLAIMED

Plaintiff's Complaint alleges injuries and damages in excess of $150,000.00. Plaintiff has made a demand to settle this case for $35,000.00. Defendants are not making a claim for damages.

## C. WITNESSES TO BE CALLED AT TRIAL

1. Defendants will call the following listed individuals to testify as a **liability and damage** witness at trial:

    (a) Amber Price
        14259 Heritage Lane
        Mount Vernon, Ohio 43050
        (419) 631-3114

  (b)  Cindy Price
     2666 US Highway 23 North
     Delaware Ohio 43015
     (703) 999-1916

2. Defendant will call the following individual as an expert witness on damages:

  (a)  Richard B. Kasdan, M.D.
     Associates in Neurology of Pittsburgh
     Centre Commons, Suite 100
     5750 Centre Avenue
     Pittsburgh, PA  15206
     (412)361-4576

     **Expert report of Dr. Kasdan (dated December 15, 2010)
     is attached hereto as Exhibit "1."**

3. Defendant may call:

  (a) Officer Marshall W. Kephart

  (b) any and all witnesses listed by the Plaintiff or any other party in their Pre-Trial Statements or any person named in the discovery of this case as a liability and/or damage witness.

  (c) any person named in any pleading, answer to interrogatory, deposition and/or pre-trial statement filed in this action as a liability and/or damage witness.

  (d) any physician or other health care provider who has treated Plaintiff at any time as a damage witness;

  (e) the medical records librarian of any hospital or other health care institution wherein the Plaintiff was confined and/or treated at any time as a damage witness.

  (f) any medical, condition or damage witness named in any pleading, answer to interrogatory, deposition and/or pre-trial statement in this lawsuit as a damage witness.

  (g) any party or current or former employee of any party as a damage witness. Defendant reserves the right to call any impeachment or rebuttal witness made necessary by any testimony or evidence at trial.

## D. EXHIBITS

Defendants will present the following exhibits as evidence:

1. Dr. Richard Kasdan's deposition transcript

Defendants may present the following exhibits as evidence if needed:

1. Photocopies of any medical records and/or wage loss records concerning the Plaintiff.

2. Any pertinent photographs or diagrams which exist.

3. Any record, document, written statement, testimony, photograph or other evidence made necessary or applicable for impeachment or rebuttal purposes by any testimony or evidence at trial.

4. Any exhibit listed in any pleading, answer to interrogatory, deposition or pre-trial statement filed in this lawsuit.

5. Court records of other lawsuits or legal proceedings involving the Plaintiff.

6. Any other exhibits as may be proper and admissible at time of trial.

7. Deposition transcripts of the parties.

## E. LEGAL ISSUES THAT SHOULD BE RESOLVED AT FINAL PRETRIAL CONFERENCE

There are no legal issues that need to be resolved at the final pre-trial conference.

## F. RESERVATION OF RIGHTS

1. Defendant reserves the right to amend this Pre-Trial Statement and to file a supplemental Pre-Trial Statement or statements with this Court at any time prior to trial.

2.   This Defendant reserves the right to take the deposition by means of video-tape or otherwise or any identified party or witness for discovery and/or for use at trial so long as any such deposition does not delay the trial of the case.

Respectfully submitted,

s/ Stephen J. Magley, Esquire

Stephen J. Magley, Esquire
Pa ID #59990
**O'MALLEY & MAGLEY, LLP**
5280 Steubenville Pike
Pittsburgh, PA 15205
(412) 788-1200 (telephone)
(412) 788-2008 (facsimile)
smagley-om@verizon.net

**EXHIBIT "1"**

# ANP

## ASSOCIATES IN NEUROLOGY OF PITTSBURGH
*A Professional Corporation*

Richard B. Kasdan, MD
Richard A. Weisman, MD
John B. Talbott, MD
Stuart L. Silverman, MD
Edward J. Mistler, DO
Kelly Maxwell, CRNP

**DIPLOMATES IN NEUROLOGY,**
American Board of Psychiatry & Neurology

Clinical Neurology
Neuromuscular Diseases
Electromyography
Evoked Potentials
Electroencephalography
Computerized Tomography
Magnetic Resonance Imaging
Non-Invasive Vascular Laboratory

December 15, 2010

Stephen J. Magley, Esquire
O'Malley and Magley, LLP
630 Freedom Business Center
King of Prussia, PA  19406

RE: Loretta Burton
Date of Loss: 11/25/07
Your File No.: L 10-0004

Dear Mr. Magley:

I saw Loretta Burton in the office today for Independent Medical Examination. She was accompanied by a representative from her counsel. Prior to evaluating her, I reviewed the following medical records:

1. Dr. Ian H. Newbold;
2. Chambersburg Hospital records;
3. Summit Health Care records;
4. Debra Bavara, M.D. records;
5. Parkway Neuroscience and Spine Institute (Julie T. Hoang, M.D.) records;
6. Diagnostic Imaging Services, LLC (Francis J. Sitro, M.D.); and
7. Orthopaedic Associates/Physical Therapy Department (Jack W. Ellertson, M.D.T.).

I supplemented this by taking a history from the patient. Her representative had no medical information to provide us.

Loretta Burton alleges that she was a belted rear seat passenger in a Toyota Corolla that was rear-ended while riding on the Pennsylvania Turnpike on the way to visit her incarcerated son. There was minor damage done to her car and, in fact, she continued the trip in the car, as it was drivable. She sought medical care 48 hours later in a local Chambersburg Hospital ER where she was evaluated, treated and released. Her complaints in the ER were neck and back pain. Her diagnosis was acute neck and back pain. The ER records clearly states that no x-rays were deemed necessary and that the likely diagnosis was a strain of the muscles aligning her spine. She was advised to see her PCP, which Loretta did on December 28, 2007, or approximately a month later. At that time, she saw Debra Bavari, M.D., who again stated that Loretta Burton had suffered a neck and back injury and recommended some outpatient physical therapy. Ms. Burton did outpatient physical therapy from January 17, 2008 through February 8, 2008 going for approximately eight sessions. She had a final note of February 8, 2008 authored by her physical therapist, Jack Eloerstern. He stated that the patient reported her condition was continuing to improve and was "near normal".

TO: Stephen J. Magley, Esquire
RE: Loretta Burton
Page 2

On January 23, 2008 Ms. Burton was referred to Ian Newbold, M.D., who saw her from January 23, 2008 until the present time. He described spine pain in her and over time found that she had entrapment of her median nerves (carpal tunnel) on both sides. He did an inordinate number of EMG/nerve conductions, totaling five times. We have results from four of them. They were done January 28, 2008; July 28, 2008; December 15, 2008 and March 9, 2009. A fifth study that we do not have was allegedly performed April 14, 2008. All studies demonstrate entrapment of the median nerves in her wrist, not surprising in a patient who does repetitive hand movements as an occupation. In fact, Ms. Burton admits to five years of picking product from an assembly line, involving mainly candy bars and nutrition supplements, and placing them into boxes. Certainly, this type of problem would have nothing whatsoever to do with a minor rear-end injury. One year later she was found to have irritation of the left L5 nerve root, a finding that, again, would have nothing whatsoever to do with a minor rear-ending injury. It is interesting that the finding did not show up on prior EMGs that the same gentleman performed, so I would certainly say that it at least had nothing to do with the accident and may have involved some event after the accident.

In spite of all five EMG/nerve conductions searching for problems in her neck and back, she never had a diagnostic image of her neck or back such as a CT scan or an MRI.

At the present time, her chief complaints center around neck pain that radiates toward her left shoulder and low back pain that does not radiate. She takes three Ultram a day. She is not on any anti-inflammatories and said that she does not do back or neck stretches because it hurts her. She has no surgical procedures or pain management treatment for her problem. She did visit a neurosurgeon, Julia Hoang, M.D. on June 16, 2008 and August 1, 2008, whose records we have. Dr. Hoang somehow diagnosed cervical spondylosis, I assume from x-ray, as the patient has denied that she has ever had an MRI, a myelogram or CT scan. She said that the type of pain that Ms. Burton had could benefit from chiropractic treatments, but would not benefit by steroid injections and made no mention of any benefit from surgical procedures.

Past medical history reflects hypertension for which she takes Diovan. She is also on birth control pills and takes a daily aspirin.

On exam, she is pleasant and cooperative. Her speech content and thought processes are normal. Her blood pressure was 160/94, pulse 72. She had slow, but full range of neck motion and slow, but full range of back motion. She described pain in her left thigh lying flat on the table with her foot dorsiflexed. She described pain in her left thigh when I lifted her left leg 10 degrees. She continues to describe pain in her left leg even when her knee was bent when all tension is off the sciatic nerve. She had no palpable spasm in her cervical or lumbar region. She had no weakness in any muscles of her arms or legs. Tapping each carpal tunnel did not induce dysesthesias and she had no weakness in the median innervated muscles of either hand. There was no atrophy on her hands or arms or legs. She had 2+ biceps, triceps, patellar and Achilles' reflexes and had no pathologic reflexes.

I offered to do an MRI of her neck and back to define this ongoing discomfort that she said is no better then it was in 2007. She, in fact, specifically denied to us that she ever had any neck or back pain, ever had a neck or back x-ray or ever had seen a chiropractor prior to November 25, 2007. She declined to have any imaging studies performed.

TO: Stephen J. Magley, Esquire
RE: Loretta Burton
Page 3

    Historically, based on her recollection of what happened and the ER records, Loretta Burton suffered a cervical and lumbar strain as a belted passenger in a minor rear-ended injury that left the car that she was in drivable. She sought care from her primary care physician, who defined a strain. At the end of her eight physical therapy session she was "near normal" by her own statement and I believe at that point was fully recovered from any and all effects of a minor lumbar and cervical strain that occurred. Her ongoing complaints are subjective and have never been supported by objective findings.

    She has had an inordinate amount of EMG/nerve conductions for reasons that are not clear to me. Nerve entrapment of the median nerves comes from repetitive motion such as her job and would have nothing whatsoever to do with the motor vehicle accident of November 25, 2007. She has never been given splints to wear or had any other treatment for carpal tunnel and in fact does not have any hand pain or hand numbness that would fit with it. Therefore, the diagnostic studies are not reasonable and necessary for her complaints and certainly are not in any way related to her accident. She did have one study that suggested irritation of the left L5 root which came on after a normal EMG of her low back and left leg. This would, of course, have nothing to do with the car accident of November 25, 2007. She has no restrictions and need no further workup that would be related to the accident of November 25, 2007.

    The above opinions are based upon reasonable medical certainty.

Sincerely,

Richard B. Kasdan, M.D.

RBK/jlh - 130



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached Pre-trial Statement was mailed via first class mail, postage prepaid on the 1st day of April, 2011 to the following:

Eric J. Swan, Esquire
Galfand Berger L.L.P.
1818 Market Street, Suite 2300
Philadelphia, PA 19103

Respectfully submitted,

s/ Stephen J. Magley, Esquire
Stephen J. Magley, Esquire
Pa ID #59990
**O'MALLEY & MAGLEY, LLP**
5280 Steubenville Pike
Pittsburgh, PA 15205
(412) 788-1200 (telephone)
(412) 788-2008 (facsimile)
smagley-om@verizon.net